## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| FRED DEVRIES, et al., individually and on behalf of all others similarly situated,<br><br>        Plaintiffs,<br><br>   v.<br><br>MORGAN STANLEY & CO. LLC, f/k/a Morgan Stanley & Co. Incorporated, MORGAN STANLEY SMITH BARNEY LLC, and MORGAN STANLEY,<br><br>        Defendants. | Case No. 9:12-cv-81223-KAM |
| JASON ZAJONC, et al., individually and on behalf of all others similarly situated,, et al., individually and on behalf of all others similarly situated,<br><br>        Plaintiffs,<br><br>   v.<br><br>MORGAN STANLEY & CO. LLC, f/k/a Morgan Stanley & Co. Incorporated, MORGAN STANLEY SMITH BARNEY LLC, and MORGAN STANLEY,<br><br>        Defendants. | Case No. 16-cv-80988-KAM |
| DARLENE JOHNSON, et al., individually and on behalf of all others similarly situated,<br><br>        Plaintiffs,<br><br>   v.<br><br>MORGAN STANLEY & CO. LLC, f/k/a Morgan Stanley & Co. Incorporated, MORGAN STANLEY SMITH BARNEY LLC, and MORGAN STANLEY,<br><br>        Defendants. | Case No. 16-cv-80975-KAM |
| SHELLEY HIX, individually and on behalf of all | |

<table>
<tr><td>others similarly situated,</td><td></td></tr>
<tr><td align="right">Plaintiffs,</td><td>Case No. 16-cv-81024-KAM</td></tr>
<tr><td>v.</td><td></td></tr>
<tr><td>MORGAN STANLEY & CO. LLC,<br>f/k/a Morgan Stanley & Co. Incorporated,<br>MORGAN STANLEY SMITH BARNEY LLC,<br>and MORGAN STANLEY,</td><td></td></tr>
<tr><td align="right">Defendants.</td><td></td></tr>
</table>

## <u>JOINT STIPULATION OF SETTLEMENT AND RELEASE</u>

This Joint Stipulation of Settlement and Release and exhibits (the "Agreement") is entered into by and between Named Plaintiffs (as hereinafter defined), and Defendants (as hereinafter defined).

## RECITALS

WHEREAS, Named Plaintiff Fred Devries filed a Collective Action Complaint, Civil Action No. 1:05-cv-09750-GBD, against Morgan Stanley & Co. LLC, Morgan Stanley Smith Barney LLC, and Morgan Stanley (collectively, "Defendants") on August 8, 2012 in the U.S. District Court for the Southern District of New York, which was transferred to the U.S. District Court for the Southern District of Florida on October 26, 2012, Civil Action No. 9:12-cv-81223-KAM ("*Devries*");

WHEREAS, Named Plaintiffs Ruby Teich, Janine Natoli, Rafael Santiago, Mark Malter and Adam Schwartz subsequently joined the case as Named Plaintiffs, and the Third Amended Collective and Class Action Complaint asserts collective claims under the Fair Labor Standards Act ("FLSA"), and class claims under Illinois, New Jersey, New York, and Pennsylvania law, on behalf of pre-production Financial Advisor Associate trainees and seeks recovery of, among other things, overtime wages, liquidated damages, attorneys' fees, and costs;

WHEREAS, three other lawsuits were filed after *Devries* against Defendants and in which the plaintiffs are represented by Plaintiffs' Counsel: (1) *Zajonc, et al. v. Morgan Stanley & Co., LLC, et al.*, Civil Action No. 14-5563, filed on December 19, 2014 in the U.S. District Court for the Northern District of California, asserts class and representative claims on behalf of pre-production Financial Advisor Associate trainees under California law, and seeks recovery of, among other things, overtime wages, compensation for missed meal and rest breaks, inaccurate wage statements, penalties, liquidated damages, attorneys' fees, and costs ("*Zajonc*"); (2) *Johnson, et al. v. Morgan Stanley & Co. LLC, et al.*, Civil Action No. 15-4865-RJS, filed on June 24, 2015 in the U.S. District Court for the Southern District of New York, asserts collective claims on behalf of Client Service Associates under the FLSA, and seeks recovery of, among other things, overtime wages, liquidated damages, attorneys' fees, and costs ("*Johnson*"); and (3) *Hix v. Morgan Stanley & Co. LLC, et al.*, Civil Action No. 15-1157, filed on January 13, 2015 in the U.S. District Court for the Southern District of New York and subsequently transferred to the

District of Maryland, asserts collective claims on behalf of Service Associates under the FLSA, and seeks recovery of, among other things, overtime wages, liquidated damages, attorneys' fees, and costs ("*Hix*");

WHEREAS, in general, these four pending lawsuits allege that Defendants have improperly denied overtime pay to various groups of non-exempt employees in violation of the FLSA and applicable state laws;

WHEREAS, Defendants denied and continue to deny all of the allegations made by plaintiffs in the Litigations (as hereinafter defined), and have denied and continue to deny that they are liable or owe damages to anyone with respect to the alleged facts or causes of action asserted in the Litigations, or that any claims asserted by plaintiffs may proceed on a class, collective, or representative action basis. Nonetheless, without admitting or conceding any arguments, issues, liability, or damages whatsoever, or that any claims alleged in the Litigations may proceed on a class, collective action, or representative basis, Defendants have agreed to settle the Litigations on the terms and conditions set forth in this Agreement, to avoid the burden and expense of continuing the Litigations;

WHEREAS, Plaintiffs' Counsel (as hereinafter defined) has conducted extensive formal discovery including, but not limited to, interviewing Named Plaintiffs, Settlement Group Members (as hereinafter defined), and other witnesses, and reviewing and analyzing thousands of documents produced by Defendants, and dozens of depositions;

WHEREAS, Plaintiffs' Counsel has analyzed and evaluated the merits of the claims made against Defendants in the Litigations, and the impact of this Agreement on Named Plaintiffs and the Settlement Group Members;

WHEREAS, based upon their analysis and their evaluation of a number of factors, and recognizing the substantial risks of continued litigation with respect to certain claims, including the possibility that the Litigations, if not settled now, might result in a recovery that is less favorable to the Named Plaintiffs and the Settlement Group Members, and that would not occur for several years, or at all, Named Plaintiffs and Plaintiffs' Counsel are satisfied that the terms and conditions of this Agreement are fair, reasonable, and adequate and that this Agreement is in the best interests of the Settlement Group Members.

NOW, THEREFORE, in consideration of the mutual covenants and promises set forth in this Agreement, as well as the good and valuable consideration provided for herein, the Parties (as hereinafter defined) hereto agree to a full and complete settlement of the Litigations, subject to court approval, on the following terms and conditions:

1.    **DEFINITIONS**

The defined terms set forth herein shall have the meanings ascribed to them below.

1.1    **Agreement**.  "Agreement" shall have the meaning set forth in the Introduction.

1.2    **Applicable Workweeks**.  "Applicable Workweeks" shall mean the following, as reflected in Defendants' internal records:

(A)    For *Devries* and *Zajonc* Settlement Group Members, the number of weeks they worked for Defendants as pre-production Financial Advisor Associate trainees: (i) in New York, from August 4, 2008 through the date of the Order and Judgment; (ii) in California, from December 19, 2010 through the date of the Order and Judgment; and (iii) for those identified in Exhibit A who worked in a state other than New York or California, three years prior to the date they signed their declaration and for all others who worked in any state other than New York or California, from the date that is three years prior to the date their opt-in forms were filed in *Devries*, through the date of the Order and Judgment.

(B)    For *Johnson* and *Hix* Settlement Group Members, the number of weeks they worked for Defendants as Client Service Associates or Service Associates from the date that is three years prior to the date their opt-in forms were filed in *Johnson* or *Hix* through the date of the Order and Judgment.

A Settlement Group Member shall be entitled to credit for only one Applicable Workweek for any particular calendar workweek.  A partial Applicable Workweek shall be credited as a fraction of a seven-day calendar week.  No credit shall be given for time (i) previously released in the *Amador, et al. v. Morgan Stanley & Co., LLC, et al.*, Civil Action No. 1:11-cv-04326-RJS (S.D.N.Y.), and *Martinez, et al. v. Morgan Stanley & Co., et al.*, Civil Action No. 37-2009-00103267-CU-0E-CTL (Cal. Super. Ct.), or (ii) during which a Settlement Group Member was on leave.

1.3    **Court**.  "Court" shall mean the United States District Court for the Southern District of Florida.

1.4    **Covered Period**.  "Covered Period" shall mean from the beginning of time through the thirtieth day after the entry of the Order and Judgment.

1.5    **Defendants**.  "Defendants" shall have the meaning set forth in the Recitals.

1.6    **Defendants' Counsel**.  "Defendants' Counsel" shall mean Morgan Lewis & Bockius LLP.

1.7    ***Devries* and *Zajonc* Settlement Group Members**.  "*Devries* and *Zajonc* Settlement Group Members" shall mean the Named Plaintiffs in *Devries* and *Zajonc*, all persons who

4

have previously opted into *Devries* and who have not withdrawn or been dismissed as of April 11, 2016, and the declarants listed in Exhibit A.   Notwithstanding the foregoing, "*Devries* and *Zajonc* Settlement Group Members" includes Agnes Aponte and Sara Motiey.

1.8   **Effective Date**.  The "Effective Date" is the date on which this Agreement becomes effective, which shall mean the date that is thirty (30) days following the last date the Order and Judgment entered by the Court approving this Agreement is appealable (30 days after the entry of judgment), if no appeal is filed.  If an appeal is taken, then the Effective Date shall be the date that is thirty (30) days after:  (i) the date of final affirmance of an appeal of the Order and Judgment, or the expiration of the time for a petition for a writ of certiorari to review the Order and Judgment and, if certiorari be granted, the date of final affirmance of the Order and Judgment following review pursuant to that grant; or (ii) the date of final dismissal of any appeal from the Order and Judgment or the final dismissal of any proceeding on certiorari to review the Order and Judgment.   Notwithstanding the foregoing, any proceeding or order, or any appeal or petition for a writ pertaining solely to the award of attorneys' fees and costs, Settlement Administrative Expenses, and/or Enhancement Awards shall not in any way delay or preclude a judgment from becoming a Final Order and Judgment.

1.9   **Enhancement Award Plaintiffs.**  Enhancement Award Plaintiffs shall mean the thirty-five opt-ins detailed in Exhibit B.

1.10   **Escrow Account**.  "Escrow Account" shall mean the FDIC insured account(s) created and controlled by the Settlement Administrator.

1.11   **Individual Settlement Amount**.  "Individual Settlement Amount" shall mean the final amount calculated for each Settlement Group Member pursuant to Section 3.7, excluding Enhancement Awards, if any.

1.12   **Order and Judgment**.  "Order and Judgment" shall mean the order entered by the Court approving the settlement and entering judgment pursuant to this Agreement in the form attached as Exhibit C.

1.13   **Litigations**.  "Litigations" shall mean the (1) *Devries*; (2) *Zajonc*; (3) *Johnson*; and (4) *Hix* cases.

1.14   ***Johnson* and *Hix* Settlement Group Members**.  "*Johnson* and *Hix* Settlement Group Members" shall mean the Named Plaintiffs in *Johnson* and *Hix* and all persons who have previously opted into *Johnson* or *Hix* and who have not withdrawn or been dismissed as of April 11, 2016.

1.15   **Maximum Settlement Amount**.  "Maximum Settlement Amount" shall have the meaning defined in Section 3.1 below.

1.16   **Named Plaintiffs**.  "Named Plaintiffs" are Fred Devries, Dennis Fowler, Shelley Hix, Darlene Johnson, Sally Kolkmeyer, Mark Malter, Janine Natoli, Rafael Santiago, Ruby Teich, Adam Schwartz, and Jason Zajonc.

**1.17**   **Net Settlement Fund**.  "Net Settlement Fund" shall mean the remainder of the Settlement Fund after deducting (a) amounts for approved attorneys' fees and costs and Settlement Administrator Expenses pursuant to Sections 2.1 and 3.2; (b) amounts for Enhancement Awards approved by the Court pursuant to Section 3.3; (c) amounts for the Reserve Fund pursuant to Section 3.5; and (d) amounts for California Private Attorney General Act ("PAGA") payments pursuant to Section 3.6.

**1.18**   **Parties**.  "Parties" shall refer to the Named Plaintiffs and Defendants.

**1.19**   **Plaintiffs' Counsel**.  "Plaintiffs' Counsel" shall mean: Klafter Olsen & Lesser LLP; Shavitz Law Group, P.A.; Outten & Golden LLP; and Migliaccio Law Firm PLLC.

**1.20**   **Participating Member**.  "Participating Member" shall mean Settlement Group Members who negotiate their Settlement Check as described in Section 3.7(H), other than Named Plaintiffs, and other than the Enhancement Award Plaintiffs who execute and timely return the agreement and release for Enhancement Award Plaintiffs.  Enhancement Award Plaintiffs who do not timely return an executed agreement and release for Enhancement Award Plaintiffs but who do negotiate their check for their Individual Settlement Amount (less applicable taxes and withholdings) will be considered Participating Members.

**1.21**   **Releasees**.  "Releasees" shall mean Morgan Stanley & Co. LLC, Morgan Stanley & Co. Incorporated, Morgan Stanley Smith Barney LLC, and Morgan Stanley, and their present and former affiliates, divisions, subsidiaries, parents, predecessors, successors, any merged entity or merged entities, and/or its or their present and former officers, partners, directors, employees, agents, attorneys, shareholders, joint ventures, joint venturers, partners, insurers or reinsurers, employee benefit plans (and the trustees, administrators, fiduciaries, agents, representatives, insurers and reinsurers of such plans), assigns, trustees, heirs, administrators, executors, representatives and/or principals thereof, and all persons or entities acting by, through, under or in concert with any of them, and any individual or entity that could be jointly liable with any of them.

**1.22**   **Settlement**.  The "Settlement" shall mean the settlement embodied in this Agreement, and all exhibits.

**1.23**   **Settlement Administration Expenses**.  "Settlement Administration Expenses" are those expenses incurred and charged by the Settlement Administrator in effectuating the Settlement.

**1.24**   **Settlement Administrator**.  "Settlement Administrator" shall mean the entity selected to administer the settlement, including mailing the Settlement Cover Letters, Settlement Notices, and Settlement Checks, as set forth in this Agreement.

**1.25**   **Settlement Checks**.  "Settlement Checks" shall mean checks issued to Settlement Group Members for their share of the Net Settlement Fund calculated in accordance with this Agreement and the PAGA amounts, if any, as described in Section 3.6.

1.26    **Settlement Cover Letter or Settlement Notice**.  "Settlement Cover Letter" or "Settlement Notice" shall mean the applicable cover letters or notice sent to Named Plaintiffs, Enhancement Award Plaintiffs, and Settlement Group Members with the Settlement Checks.

1.27    **Settlement Fund**.  The "Settlement Fund" shall mean the settlement fund created by the payment by Defendants of the Maximum Settlement Amount, less any amounts not approved by the Court for attorneys' fees and costs and Settlement Administration Expenses as described in Section 3.2.

1.28    **Settlement Group Members**.  "Settlement Group Members" shall mean the *Devries* and *Zajonc* Settlement Group Members and the *Johnson* and *Hix* Settlement Group Members.

2.      **APPROVAL OF SETTLEMENT AND CHECK MAILING PROCESS**

2.1     **Retention of Settlement Administrator**.  The Parties have selected Rust Consulting to be the Settlement Administrator.  The Settlement Administrator shall be responsible for the settlement administration process and distributions to Settlement Group Members as provided herein, as well as for making any mailings and performing other services as required under this Agreement.  The Parties agree to cooperate with the Settlement Administrator and assist it in administering the Settlement.  All Settlement Administration Expenses shall come out of the Settlement Fund.  If the Settlement is not approved by the Court and does not become effective, Defendants and Plaintiffs' Counsel shall bear settlement administration fees and costs equally.

2.2     ***Devries* and Transfer of *Zajonc*, *Johnson* and *Hix***.  Within five (5) business days after the execution of this Settlement Agreement, unless otherwise agreed to by Plaintiffs' Counsel and Defendants' Counsel in writing, (1) Named Plaintiff Dennis Fowler and the declarants listed in Exhibit A shall opt into *Devries*, and (2) the parties in each of *Zajonc*, *Johnson* and *Hix* will jointly submit to each of their respective courts a Motion for Transfer ("Motion to Transfer"), requesting transfer to the Court, and will cooperate to consolidate these cases with *Devries* solely for the purpose of settlement.   If any Motion for Transfer is not granted in *Zajonc*, *Johnson* or *Hix* (or is granted in a manner that is inconsistent with the intent of the parties to effect the Agreement), the parties in the respective case will make a request to withdraw the case without prejudice, with a right to renew claims asserted in the current *Zajonc, Johnson and Hix* complaints if the settlement is not approved.  If renewed, Defendants agree that all claims relate back to the initial filing of those respective claims, and Defendants do not waive any defenses with respect to those claims.  The named and opt-in plaintiffs from the withdrawn case(s) shall then individually re-file their claims and opt-in in the Court and the Parties shall cooperate and make all reasonable efforts to have them assigned to Judge Kenneth Marra and consolidated with *Devries* so that those claims may be resolved under this Agreement.

2.3     **Settlement Approval by the Court**.  On or before June 29, 2016, unless otherwise agreed to by Plaintiffs' Counsel and Defendants' Counsel in writing and ordered by the Court, Named Plaintiffs will submit to the Court a Motion for Approval of Settlement and Release ("Settlement Approval Motion").  In connection with the Settlement

Approval Motion, Named Plaintiffs will submit to the Court, among other things: (a) a proposed Settlement Cover Letter to Named Plaintiffs which is attached as Exhibit D; (b) a proposed Settlement Cover Letter to Enhancement Award Plaintiffs, which is attached as Exhibit E; (c) a proposed agreement and release for Enhancement Award Plaintiffs, which is attached as Exhibit F  (d) a proposed Settlement Notice, which shall include a release, to Settlement Group Members, other than Named Plaintiffs and Enhancement Award Plaintiffs, which is attached as Exhibit G; and (e) a proposed Order and Judgment granting settlement approval, which is attached as Exhibit C.  The Order and Judgment Granting Settlement Approval will, among other things: (1) enter Judgment in accordance with this Agreement; (2) approve the Settlement and release as fair, adequate, reasonable, and binding on all Named Plaintiffs, Enhancement Award Plaintiffs, and Participating Members; (3) dismiss the *Devries* case in its entirety, including the dismissal with prejudice of the claims transferred and/or consolidated from *Zajonc*, *Johnson*, and *Hix*; (4) enter an order permanently enjoining all Named Plaintiffs, Enhancement Award Plaintiffs, and Participating Members from pursuing and/or seeking to pursue claims that have been released by this Agreement; (5) provide for the payment of the amounts the Court approves pursuant to Sections 3.2, 3.3 and 3.6; and (6) incorporate the terms of this Agreement.  Plaintiffs' Counsel will provide Defendants' Counsel with a draft of the Settlement Approval Motion and exhibits at least ten (10) business days before its filing and will incorporate reasonable comments provided by Defendants.  Defendants will not oppose the Settlement Approval Motion provided that it is made consistent with this Agreement.

**2.4    Settlement Cover Letters, Settlement Notices, and Settlement Check Mailing**.

(A)    Within fourteen (14) days following the Effective Date, Defendants will provide the Settlement Administrator and Plaintiffs' Counsel with a list, in electronic form, of the names, last known addresses, Social Security Numbers, state(s) worked, Applicable Workweeks worked by Settlement Group Members, the Settlement Group to which they belong, the Enhancement Award (if applicable), and the PAGA workweeks (if applicable) pursuant to Section 3.6 ("Settlement Group Member Contact and Amount Information").  Prior to the provision of the Settlement Group Member Contact and Amount Information, the Settlement Administrator shall execute an agreement, in a form acceptable to Defendants, not to use or disclose the information from the Settlement Group Member Contact and Amount Information except as is necessary to perform the services required of the Settlement Administrator under this Agreement.

(B)    Prior to mailing the Settlement Cover Letters and Settlement Checks, the Settlement Administrator will update the addresses for those on the Settlement Group Member Contact and Amount Information using the National Change of Address database and other available resources deemed suitable by the Settlement Administrator.  Plaintiffs' Counsel will also provide the Settlement Administrator with any updated addresses for Settlement Group Members.

(C)    Within ten (10) business days after the Funding Date, defined below, or as soon thereafter as practicable, the Settlement Administrator shall mail, via First Class United States mail, postage prepaid,

    (1)    To each Named Plaintiff:  (a) the Settlement Cover Letter to Named Plaintiffs which is attached as Exhibit D; (b) the Settlement Notice; and (c) a Settlement Check with the Named Plaintiff's Individual Settlement Amount (less applicable taxes and withholdings) and Enhancement Award (less applicable taxes and withholdings).

    (2)    To each Enhancement Award Plaintiff who complies with the requirements as described in Section 2.4 (F): (a) the Settlement Cover Letter to Enhancement Award Plaintiffs which is attached as Exhibit E; (b) the Settlement Notice; and (c) a Settlement Check with the Enhancement Award Plaintiff's Individual Settlement Amount (less applicable taxes and withholdings) and Enhancement Award (less applicable taxes and withholdings).

    (3)    To each Settlement Group Member, other than Named Plaintiffs and Enhancement Award Plaintiffs:  (a) the Settlement Notice, which shall include the release, for Settlement Group Members other than Named Plaintiffs and Enhancement Award Plaintiffs, which is attached as Exhibit G; and (b) a Settlement Check with the Settlement Group Member's Individual Settlement Amount (less applicable taxes and withholdings).

(D)    The Settlement Administrator shall give the parties two (2) business days' notice before the Settlement Cover Letters, Settlement Notices and Settlement Checks are sent out.  The Settlement Administrator shall take all reasonable steps to obtain the correct address of any Settlement Group Member for whom the Settlement Cover Letter and/or Settlement Notice and Settlement Check are returned by the post office as undeliverable and shall attempt re-mailings as described below.

(E)    If any Settlement Cover Letters and/or Settlement Notices and Settlement Checks are returned as undeliverable, the Settlement Administrator shall forward them to any forwarding addresses provided by the U.S. Postal Service.  If no such forwarding address is provided, the Settlement Administrator shall perform skip traces using the Settlement Group Member's Social Security Number to attempt to obtain the most recent addresses for these Settlement Group Members.   The Settlement Administrator shall also promptly advise the Plaintiffs' Counsel and Defendants' Counsel of all Settlement Cover Letters, Settlement Notices, and Settlement Checks that are returned by the post office as undeliverable.

(F)    If and when the Court grants settlement approval as described in Section 2.3, Plaintiffs' Counsel shall provide the agreement and release for Enhancement Award Plaintiffs attached as Exhibit F to each Enhancement Award Plaintiff.   For an Enhancement Award Plaintiff to receive an Enhancement Award, Defendants'

Counsel must receive from the Enhancement Award Plaintiff a properly executed agreement and release for Enhancement Award Plaintiffs within fourteen (14) days following the Effective Date ("Enhancement Award Deadline").  If an Enhancement Award Plaintiff does not provide Defendants' Counsel a properly executed agreement and release for Enhancement Award Plaintiffs by the Enhancement Award Deadline, as described in this Section 2.4(F), then that Enhancement Award Plaintiff will forfeit his Enhancement Award and will receive the Settlement Notice and Settlement Check as described in Section 2.4(C)(3).  Any forfeited Enhancement Awards shall become part of the Net Settlement Fund.

2.5    **Settlement Administrator Reporting**.  After mailing the Settlement Cover Letters, Settlement Notices, and Settlement Checks, the Settlement Administrator shall provide reports to counsel for the Parties every two weeks with respect to the number of individuals negotiating Settlement Checks, disputing Individual Settlement Amounts, and whose Settlement Cover Letter, Settlement Notice and Settlement Check were undeliverable.  Within ten (10) calendar days after the Settlement Checks become null and void pursuant to Section 3.7(H), the Settlement Administrator shall prepare a final list of all Settlement Group Members who negotiated Settlement Checks and checks for Enhancement Awards, together with copies of the negotiated Settlement Checks, and provide such information and documents to Defendants' Counsel and Plaintiffs' Counsel. The Settlement Administrator will update and supplement this information as necessary at the request of counsel for the Parties.

2.6    **Right to Revoke**.  Plaintiffs and Defendants have the right to withdraw from the Settlement at any time prior to the entry of the Order and Judgment if: (a) the Settlement is not approved by the Court (or is approved in a manner that is inconsistent with the intent of the parties to effect the Agreement) as described in Section 2.3, or (b) any of the Litigations (or the claims transferred and/or consolidated from *Zajonc*, *Johnson*, and *Hix*) are not dismissed in their entirety with prejudice. Defendants further have the right to withdraw from the Settlement at any time prior to the entry of the Order and Judgment if: (x) the Settlement is construed in such a fashion that Defendants are required to pay more than the Maximum Settlement; or (y) Plaintiffs' Counsel materially breach pursuant to Section 3.12 below.

2.7    **Effect of Revocation or Failure to Grant Settlement Approval**.  In the event the Court fails to enter Judgment in accordance with this Agreement, or the Agreement does not become effective, or Plaintiffs or Defendants revoke the Settlement pursuant to Section 2.6: (i) this Agreement shall have no force or effect, other than this Section 2.7, the allocation of Settlement Administration Expenses in Sections 2.1 and 3.2, the non-disclosure provisions in Section 3.9(C), 3.9(F), and 3.12, and the non-admission provisions in Section 3.11; (ii) neither this Agreement, nor any other related papers or orders, nor the negotiations leading to the Settlement, shall be cited to, used, or admissible in any judicial, administrative, or arbitral proceeding for any purpose or with respect to any issue, substantive or procedural; (iii) none of the Parties will be deemed to have waived any claims, objections, defenses, or arguments with respect to the issue of class or collective action certification or the merits of Plaintiffs' claims or any other

10

issue; and (iv) the Litigations will proceed and can be renewed as if no settlement had been attempted, including transferring the cases back to their original jurisdictions or refiling the cases dismissed without prejudice, as applicable.

**3.   SETTLEMENT TERMS**

**3.1   Settlement Payment**.

(A)   Defendants agree to pay a maximum of $5,995,000.00 (the "Maximum Settlement Amount"), minus any amounts not approved by the Court as described in Section 2.3, which shall resolve and satisfy all monetary obligations under this Agreement, including all claims in the Litigations, all attorneys' fees, litigation costs, Settlement Administration Expenses, payments to Settlement Group Members, PAGA payments, all payroll taxes and all other applicable taxes (with the sole exception and exclusion of the employer's share of payroll taxes as described in Section 3.8), interest, the Reserve Fund, and Enhancement Awards. Except for the employer's share of payroll taxes as described in Section 3.8, Defendants shall not pay more than the Maximum Settlement Amount.

(B)   Defendants shall deposit the Settlement Fund into the Escrow Account within fourteen (14) business days of the Effective Date (the "Funding Date").

(C)   For each Settlement Group Member, the Settlement Administrator will calculate the final amounts due as the Individual Settlement Amounts and issue a Settlement Check (less applicable taxes and withholdings) payable to each Settlement Group Member.

(D)   Within ten (10) business days following the Funding Date, the Settlement Administrator will distribute the money in the Escrow Account by making the following payments:

(1)   Paying Plaintiffs' Counsel all Court-approved attorneys' fees and litigation costs as described in Section 3.2.

(2)   Paying Settlement Administration Expenses as described in Sections 2.1 and 3.2.

(3)   Issuing Settlement Checks to Settlement Group Members for their Individual Settlement Amounts (less applicable taxes and withholdings) as described in Section 3.7, including any PAGA amounts (less applicable taxes and withholdings) as described in Section 3.6, and for the all Court-approved Enhancement Awards (less applicable taxes and withholdings) as described in Section 3.3 for Enhancement Award Plaintiffs who comply with the requirements described in Section 2.4(F).

(4)   Reserving funds to be available for the Reserve Fund as described in Section 3.5.

11

(E)     The Parties agree that the Escrow Account is intended to be a "Qualified Settlement Fund" under Section 468B of the Code and Treas. Reg. §1.468B-1, 26 CFR § 1.468B-1, et seq., and will be administered by the Settlement Administrator as such.  With respect to the Escrow Account, the Settlement Administrator shall: (1) calculate, withhold, remit and report each Settlement Group Member's share of applicable payroll taxes (including, without limitation, federal, state and local income tax withholding, FICA, Medicare and any state or local employment taxes); (2) indemnify Defendants for any penalty arising out of any error or incorrect calculation and/or interest with respect to any late deposit of the same; (3) satisfy all federal, state and local and income and other tax reporting, return and filing requirements with respect to the Escrow Account; and (4) satisfy out of the Escrow Account all (i) taxes (including any estimated taxes, interest or penalties) with respect to any interest or other income earned by the Escrow Account, and (ii) fees, expenses and costs incurred in connection with the opening and administration of the Escrow Account and the performance of its duties and functions as described in this Agreement.  The aforementioned taxes, fees, costs and expenses shall be treated as and included in the costs of administering the Escrow Account.  The Parties and the Settlement Administrator shall elect to treat the Settlement Fund as coming into existence as a Qualified Settlement Fund on the earliest date set forth in 26 CFR §1.468B-1(j)(2)(i), and that such election statement shall be attached to the appropriate returns as required by 26 CFR §1.468B-1(j)(2)(ii).  The Parties agree to cooperate with the Settlement Administrator and one another to the extent reasonably necessary to carry out the provisions of this Section 3.1(E).  The Settlement Administrator will agree to indemnify and hold harmless the Parties for and against any claims or liabilities resulting from errors or omissions in its administration of the Escrow Account.

(F)     The payments to Settlement Group Members pursuant to Section 3.7 shall be considered compensation for disputed unpaid wages and non-wage income, as set forth in Section 3.8(B) during the period of employment with Defendants by the individual Settlement Group Member.  To the extent any settlement payment results in any overpayment of unemployment benefits to any Settlement Group Member, the amount of any such overpayment shall be the responsibility of the individual Plaintiff and/or Settlement Group Member.

**3.2     Settlement Amounts Payable as Attorneys' Fees and Costs and Settlement Administration Expenses**.

(A)     Plaintiffs' Counsel shall petition the Court for an award of attorneys' fees, reimbursement of reasonable litigation costs and expenses, and Settlement Administration Expenses, from the Maximum Settlement Amount, which shall not exceed $4,195,000.00.  Defendants shall have no additional liability for attorneys' fees and costs relating to the Litigations, the Settlement, or any claims released by this Settlement.

(B)     The substance of Plaintiffs' Counsel's applications for attorneys' fees and costs and Settlement Administration Expenses is not part of this Agreement and is to be considered separately from the Court's consideration of the fairness, reasonableness, adequacy, and good faith of the settlement of the Litigation. Defendants will not oppose such application so long as it is consistent with the terms of this Agreement.  The outcome of any proceeding related to Plaintiffs' Counsel's application for attorneys' fees and costs and Settlement Administration Expenses shall not terminate this Agreement or otherwise affect the Court's ruling on the Settlement Approval Motion.   Any reduction by the Court of Plaintiffs' Counsel's application for attorneys' fees shall be deducted from the Maximum Settlement Amount and shall remain with Defendants.  Any reduction by the Court of Plaintiffs' Counsel's application for Settlement Administration Expenses shall become part of the Net Settlement Fund.  In the event Plaintiffs' Counsel appeals a determination of the Court regarding the application for attorneys' fees and costs and Settlement Administration Expenses, such appeal shall not affect the Effective Date.

(C)     The Court-approved attorneys' fees and costs will be wired to Plaintiffs' Counsel by the Settlement Administrator within ten (10) business days after the Funding Date.

3.3     **Enhancement Awards**.  Plaintiffs will petition the Court for Enhancement Awards from the Settlement Fund for the Named Plaintiffs and Enhancement Award Plaintiffs in the amounts as follows: $10,000.00 to Fred Devries, $8,000.00 to Ruby Teich, $5,000.00 each to Dennis Fowler, Shelley Hix, Darlene Johnson, Sally Kolkmeyer, Mark Malter, Janine Natoli, Rafael Santiago, Adam Schwartz, and Jason Zajonc, and $1,000.00 each to the Enhancement Award Plaintiffs.  Defendants will not oppose such application. Subject to the requirements set forth in Section 2.2(F), the Enhancement Awards shall be paid in addition to Named Plaintiffs' and Enhancement Award Plaintiffs' recovery from the formula allocation from the Net Settlement Fund as described in Section 3.7, but all amounts for both the Enhancement Awards and formula allocation will be paid out of the Settlement Fund.  The outcome of the Court's ruling on the application for an Enhancement Award shall not terminate this Agreement or otherwise affect the Court's ruling on the Motion for Settlement Approval.  Any reduction by the Court of Plaintiff's application for Enhancement Awards or any Enhancement Award forfeited by an Enhancement Award Plaintiff who fails to return an executed agreement and release for Enhancement Award Plaintiffs by the Enhancement Award Deadline as described in Section 2.4(F) shall become part of the Net Settlement Fund.  In the event Plaintiffs' Counsel appeals a determination of the Court regarding the petition for Enhancement Awards, such appeal shall not affect the Effective Date.

3.4     **Disputed and Other Claims**.

(A)     The Settlement Administrator shall promptly advise counsel for the Parties of any Settlement Group Members who dispute their allocation based on the number of workweeks or the application of the settlement formula.   For disputed claims, the Settlement Administrator shall determine whether their allocation based on the

documents and information provided and the settlement formula should be corrected (as applicable).  Defendants shall provide reasonable additional information based on their internal records to assist the Settlement Administrator in making determinations concerning disputed claims.

(B)    The Settlement Administrator shall also promptly advise counsel for the Parties of any individuals who have come forward who were not identified as Settlement Group Members but have a good-faith claim that they should have been included in the Settlement Group Member Contact and Amount Information as a Settlement Group Member ("Self-Identifiers").  Defendants shall decide, in their sole discretion, whether Self-Identifiers should be included in the Settlement Group Member Contact and Amount Information as a Settlement Group Member. If accepted, Self-Identifiers shall be considered Settlement Group Members for all purposes under this Agreement.

(C)    For purposes of any disputed and other claims, Defendants' internal records are presumed to be accurate unless the disputing individual or Self-Identifier submits documentation conclusively demonstrating otherwise.  Disputed and Self-Identifier claims must be submitted in writing, with all supporting documentation, to the Settlement Administrator and must be postmarked by the 60th day after the date of the initial mailings described in Section 2.4(C)(1)-(3), or will be deemed to be waived.

(D)    Any Settlement Group Member whose allocation is permitted to be increased or allowed after Settlement Checks are issued, in accordance with this Section 3.4, shall be paid from the Reserve Fund.  If the amount required to resolve disputed claims exceeds the Reserve Fund, then the disputed workweek amounts will be paid pro-rata from the available Reserve Fund.  After disputes have been paid, Self-Identifiers will be paid from the remaining Reserve Fund using the applicable allocation as described in Section 3.7.  In no event shall changes to allocations or acceptance of Self-Identifiers in accordance with this Section result in Defendants being required to pay more than the Maximum Settlement Amount. Notwithstanding the above, if the Reserve Fund is insufficient to make payments to Self-Identifiers using the applicable allocation as described in Section 3.7, Defendants may decide, but are not obligated, in their sole discretion, to make additional payments for Disputed and Self-Identifier claims in the amount the disputing individual or Self-Identifier would have received under this Agreement and using the applicable formula described in Section 3.7 in exchange for the release and agreeing to the obligations described in Section 3.9(A). Individuals who are neither a Settlement Group Member nor an accepted Self-Identifier will be read a script by the Settlement Administrator as agreed by and between the Parties which explains they are not part of the Settlement, they will not be provided with contact information for either Party, unless they specifically request contact information for either party, in which case the Settlement Administrator shall provide them with contact information for counsel for the such party.

14

3.5     **Reserve Fund and Cy Pres**.  Fifty Thousand Dollars ($50,000.00) of the Maximum Settlement Amount shall be held by the Settlement Administrator used as a Reserve Fund to make payments pursuant to Section 3.4.  The money in the Reserve Fund shall remain available to pay such amounts until 180 days after the Effective Date.  After that date, any money remaining from the Reserve Fund shall be divided and paid equally to cy pres recipients designated jointly by the parties as "Equal Justice Works" (1730 M Street, NW, Suite 1010, Washington, DC 20036-4511) and "The Legal Aid Society Employment Law Project" (199 Water Street, New York, NY 10038).

3.6     **LWDA Private Attorney General Act Payment**.  The Parties agree that $5,000.00 of the Maximum Settlement Amount shall be allocated as settlement of claims under PAGA. Seventy-five percent (75%) of that total or, $3,750.00, shall be paid to the LWDA pursuant to the provisions of PAGA. The remaining twenty-five percent (25%), or $1,250.00, shall be distributed on a pro-rata basis to the *Devries* and *Zajonc* Settlement Group Members for the time they worked for Defendants in California anytime from August 7, 2014 through the date of the Order and Judgment. Any reduction by the Court of Plaintiff's application for PAGA penalties shall become part of the Net Settlement Fund.

3.7     **Distribution to Settlement Group Members**.

(A)     The Net Settlement Fund shall be the amount of money remaining from the Maximum Settlement Amount after deducting (a) the amount requested for attorneys' fees and costs and Settlement Administrator Expenses pursuant to Sections 2.1 and 3.2; (b) amounts for Enhancement Awards approved by the Court pursuant to Section 3.3; (c) amounts for the Reserve Fund pursuant to Section 3.5; and (d) amounts for PAGA payments pursuant to Section 3.6.

(B)     The Net Settlement Fund shall be allocated to the *Johnson* and *Hix* Settlement Group Members as follows:  each *Johnson* and *Hix* Settlement Group Member will have his or her individual Applicable Workweeks multiplied by $7.84, and that amount shall be each *Johnson* and *Hix* Settlement Group Member's Individual Settlement Amount.

(C)     After the payments are allocated in Section 3.7(B) and subtracted from the Net Settlement Fund (the "Balance Net Settlement Fund"), the Balance Net Settlement Fund will be divided by the aggregate number of Applicable Workweeks accrued by all of the *Devries* and *Zajonc* Settlement Group Members ("Initial Workweek Value").  Each *Devries* and *Zajonc* Settlement Group Member's total Applicable Workweeks will be multiplied by the Initial Workweek Value to determine his or her "Initial Settlement Amount." Notwithstanding the above, any *Devries* and *Zajonc* Settlement Group Member with an Initial Settlement Amount of less than $200.00 will be allocated $200.00 (the "Minimum Individual Settlement Amount") as their Individual Settlement Amount.  After determining *Devries* and *Zajonc* Settlement Group Members who will be allocated the Minimum Individual Settlement Amount, the workweek value shall be recalculated for all other *Devries* and *Zajonc* Settlement Group

15

Members as follows:  the Balance Net Settlement Fund, less amounts allocated to those *Devries* and *Zajonc* Settlement Group Members receiving the Minimum Individual Settlement Amount, will be divided by the Applicable Workweeks for the *Devries* and *Zajonc* Settlement Group Members who do not receive the Minimum Individual Settlement Amount  to determine the "Final Workweek Value".  The Applicable Workweeks for each *Devries* and *Zajonc* Settlement Group Member who is not a Minimum Amount Settlement Group Member will be multiplied by the Final Workweek Value to determine his or her Individual Settlement Amount.

(D)     In addition to the amounts allocated in Section 3.7(C), each *Devries* and *Zajonc* Settlement Group Member who worked for Defendants in California, will receive a pro-rata share of $1,250.00, the amount allocated to them to settle their PAGA claims, based on their pro-rata workweeks pursuant to Section 3.6.

(E)     A Settlement Group Member's Individual Settlement Amount shall be their Individual Settlement Amount, subject to any adjustments under Section 3.7(D).

(F)     Names of Settlement Group Members and their allocation amounts shall be kept strictly confidential by the Settlement Administrator, which information will not be disclosed except to Plaintiffs' Counsel and Defendants' Counsel and otherwise as is necessary to the administration of the Settlement, and will not be filed with the Court, however, to the extent it becomes necessary to file, such information will be filed under seal to the extent permitted by the Court.

(G)     Defendants and the Settlement Administrator shall exchange such information as is necessary and reasonably available for the Settlement Administrator to make proper tax withholdings and comply with tax reporting obligations as described in Section 3.8.

(H)     Settlement Group Members will have ninety (90) calendar days after each Settlement Check date to redeem their settlement payments.  If a Settlement Group Member demonstrates to the Settlement Administrator within sixty (60) calendar days of the expiration of the Settlement Check good cause for failure to negotiate the Settlement Check, the Settlement Administrator will reissue a replacement Settlement Check to that Settlement Group Member and he or she will have will have thirty (30) calendar days after the reissued Settlement Check date to redeem his or her settlement payments.  If Settlement Group Members do not redeem their Settlement Checks within the applicable period as described in this Section 3.7(H), their checks (the "Unclaimed Checks") will be void and a stop-payment will be placed.  In such event, the amounts associated with the Unclaimed Settlement Checks shall revert to Defendants and shall be paid to Defendants by the Settlement Administrator ("Unclaimed Check Retained Funds") twenty (20) days after the last Settlement Check becomes void.  Named Plaintiffs who do not negotiate their Settlement Checks shall be bound by this Settlement and the release in Section 3.9(D).  Enhancement Award Plaintiffs who execute the agreement and release for Enhancement Award Plaintiffs but who do

16

not negotiate their Enhancement Award checks shall be bound by this Settlement and the release in Section 3.9(D). This Agreement and the associated Order and Judgment do not and will not create any unpaid residue or unpaid residual with respect to the Retained Funds or Unclaimed Settlement Check Retained Funds, and no distribution of such shall be required. The provisions of any unclaimed property statute or law do not apply to this action or this Agreement.

(I)     All payments to Settlement Group Members made pursuant to this Agreement shall be deemed to be paid to such Settlement Group Members solely in the year in which such payments actually are received by the Settlement Group Members. It is expressly understood and agreed that any amount paid to any Settlement Group Members shall not create any credit or otherwise affect the calculation of benefits provided under any pension, retirement, retirement savings, excess or supplemental retirement or retirement savings, any deferred compensation, bonus, equity, incentive, severance, displacement, supplemental unemployment, health, life, or disability plan, or any benefit, pension, or other compensation or benefit plan, policy, program, or arrangement (collectively, the "Morgan Stanley Benefit Plans") provided by Defendants or any Releasee, and no payment made pursuant to this Settlement will be considered as "Compensation," "Earnings," "Salary," or any similar definition under any Morgan Stanley Benefit Plans, and are not considered eligible compensation for Morgan Stanley Benefit Plans, or for Morgan Stanley's 401(k) Savings and Retirement Plans, or for any other benefit purposes, or otherwise require any contribution or award under any Morgan Stanley Benefit Plan, or otherwise modify benefits, contributions or coverage under any Morgan Stanley Benefit Plan.

## 3.8    Taxability of Settlement Payments.

(A)     For tax purposes, the Enhancement Awards paid to the Named Plaintiffs and Enhancement Award Plaintiffs pursuant to Section 3.3 shall be treated as wages.

(B)     For tax purposes, the payments to Settlement Group Members pursuant to Section 3.7 shall be allocated as follows: unpaid wages (50% of each settlement payment) and non-wage income (penalties, interest, etc.) (50% of each settlement payment). Settlement Group Members will be exclusively responsible for their own portion of payroll and income taxes on the 50% of each settlement payment that is unpaid wages, and such amounts will be withheld from settlement payments. Plaintiffs and Settlement Group Members shall be exclusively liable for any and all tax liability, if any (other than the employer's share of payroll taxes specified in Section 3.8(E).

(C)     Payments treated as wages pursuant to Sections 3.8(A) and (B) shall be made net of all applicable employment taxes, including, without limitation, federal, state and local income tax withholding and the employee share of the FICA tax, and shall be reported to the Internal Revenue Service ("IRS") and the payee under the payee's name and Social Security Number on an IRS Form W-2. Payments of

17

non-wage income pursuant to Section 3.8(B) shall be reported to the IRS on Form 1099 without withholding.

(D)     As to the payments reported as non-wage income, each individual Settlement Group Member agrees to indemnify and hold harmless Defendants for any taxes, penalties, interest or other amounts due or owing by that Settlement Group Member on such payments.  Other than as set forth above, Defendants will not make from the payment to each Settlement Group Member any deductions, withholdings, or additional payments, including, without limitation, medical or other insurance payments or premiums, employee 401(k) contributions or matching employer contributions, wage garnishments, or charity withholdings, and entry of the Order and Judgment by the Court shall be deemed authority not to make such deductions, withholdings, or additional payments.  Any amount paid to Settlement Group Members shall not create any credit or otherwise affect the calculation of any deferred compensation, benefit, pension, or other compensation or benefit plan provided by Defendants.

(E)     Defendants shall cooperate with the Settlement Administrator to timely arrive at an amount equal to the employer's share of the FICA tax and any federal and state unemployment tax due that are traditionally borne by employers, with respect to the amounts treated as wages pursuant to Section 3.7, and Defendants shall promptly pay such amounts to the Escrow Account.  The Settlement Administrator shall be responsible for making all reporting, deposits, and withholdings with respect to all amounts payable to Settlement Group Members required pursuant to any federal, state, or local tax law or regulation hereunder under the EIN of the Escrow Account.

(F)     Each individual Settlement Group Member will be solely responsible for all taxes, interest, penalties, or other amounts due with respect to any payment received by that individual pursuant to this Agreement (other than taxes specified in Section 3.8(C) and 3.8(E)).  Named Plaintiffs acknowledge and agree that they have not relied upon any advice from Defendants as to the taxability of the payments received pursuant to this Agreement.

(G)     The Parties will secure an agreement with the Settlement Administrator that it shall handle all tax reporting with respect to the payments made pursuant to this Agreement and shall report the payments in accordance with applicable law, agrees to be solely responsible for information reporting to the appropriate authorities, including, without limitation, the Internal Revenue Service, with respect to any payments it makes and/or is required to make, and assumes liability for, agrees to indemnify and hold the Qualified Settlement Fund and Defendants harmless from and against, any and all taxes, fines, penalties or other losses, expenses or damages that may be imposed in connection with such information reporting or failure thereof, notwithstanding anything in this or any other agreement which may otherwise limit or restrict the indemnification obligation of this paragraph (G).

3.9    **Release**.

(A)    **Release of Claims by Participating Members**.  By virtue of entry of the Order and Judgment, and except as to such rights or claims as may be created by this Agreement, each Participating Member, on his or her behalf, and on behalf of his or her respective current, former and future representatives, heirs, assigns, spouses, executors, administrators, beneficiaries, agents, and attorneys, as applicable and without limitation, shall be deemed to have fully, finally and forever released and discharged Releasees, of and from any and all federal, state, and local wage and hour claims, including statutory claims, whether known or unknown, in law or in equity, including, but not limited to, any Fair Labor Standards Act ("FLSA") claims (including but not limited to claims under 29 U.S.C. §§ 206, 211(c) and 215(a), including liquidated damages), and any and all wage and hour claims under any state or local law that accrued or accrue prior to the last date of the Covered Period, including claims under any legal theory for failure to pay minimum wage, failure to pay overtime, failure to pay for all hours worked, failure to provide meal and rest periods, failure to timely pay wages and final wages, failure to reimburse for business expenses, failure to furnish accurate wage statements or other notices, failure to keep accurate records, and any and all claims for recovery of compensation, overtime pay, minimum wage, premium pay, interest, and/or penalties, including derivative and/or related claims to the claims released in this Section 3.9(A) (including claims under the Employee Retirement Income Security Act ("ERISA")), other penalties, related tort and punitive and liquidated damages claims, and/or violations of any other federal, state (including the California Labor Code Section 2698 *et seq.*, the California Private Attorneys General Act of 2004 ("PAGA"), if applicable), California's Wage Orders, California Business & Professions Code, and local statutory and common law.

This Settlement is intended to include in its effect all claims identified in this Section 3.9(A), including claims that each Participating Member does not know or suspect to exist in his or her favor against Defendants or Releasees at the time of the release.

The Participating Members shall be deemed to have expressly waived and relinquished, to the fullest extent permitted by law, the provisions, rights, and benefits they may otherwise have had relating to the Release of Claims by Participating Members, pursuant to Section 1542 of the California Civil Code, if applicable, which provides as follows:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known to him or her must have materially affected his or her settlement with the debtor.

Participating Members may hereafter discover facts in addition to or different from those which they now know or believe to be true with respect to the subject

matter of Release of Claims by Participating Members, but they shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever settled and released any and all Release of Claims by Participating Members, known or unknown, suspected or unsuspected, contingent or non-contingent, whether or not concealed or hidden, which then exist, or heretofore have existed upon any theory of law or equity now existing or coming into existence in the future, including, but not limited to, conduct which is negligent, intentional, with or without malice, or a breach of any duty, law or rule, without regard to the subsequent discovery or existence of such different or additional facts.

**Limited Carve Out For Participating Members From the *Devries* and *Zajonc* Settlement Group**:  Other than the claims released in this Settlement, which includes PAGA (if applicable), Participating Members' other claims that are not pending in *Devries*, *Zajonc*, *Hix* or *Johnson* that were pending as of March 8, 2016, by or on behalf of any member of the *Devries* and *Zajonc* Settlement Group, including but not limited to claims pending in *In re: Morgan Stanley Smith Barney LLC Wage and Hour Litigation*, Case No. 2:11-cv-03121 (D.N.J.), are explicitly carved out of this Release ("Limited Carve Out").  This Limited Carve Out does not itself preclude claims from being pursued if class or collective certification is denied in any such putative class or collective actions that were pending as of March 8, 2016.

Subject to the Limited Carve Out, Participating Members agree: (1) that they have been paid for any and all undisputed wages; (2) that they and Defendants have reached an amicable agreement regarding any and all amounts of disputed wages; and (3) that they are releasing Defendants from any wage claims as to any disputed wages, based on Participating Member's acknowledgement that the Participating Member and Defendants have reached an amicable agreement regarding the payment of the disputed wages.

All Settlement Checks issued to Settlement Group Members shall contain on the back of the check the following limited endorsement:

"**FINAL RELEASE OF CLAIMS**:

By endorsing this check, I agree to be bound by the Settlement Agreement negotiated by the Parties in *Devries, et al. v. Morgan Stanley & Co. LLC, et al.*, Civil Action No. 9:12-cv-81223-KAM, and irrevocably and unconditionally waive, release, extinguish, acquit, and forever discharge the Released Claims as defined in the Settlement Notice I received with this check.

_____
Signature"

Subject to agreement by Plaintiffs' Counsel, which agreement will not be unreasonably withheld, the language of the limited endorsement can be changed by Defendants as necessary to effectuate the release.

(B)     Any Settlement Check that is negotiated by a Participating Member shall signify the consent of such Participating Member to release the Released Claims as defined in the Settlement Notice as a matter of law, regardless of whether the Settlement Check is signed or the language set forth in Section 3.9(A) has been crossed out, excised, deleted, or amended.

(C)     Participating Members covenant that they will not disclose to individuals other than immediate family, tax preparers, and attorneys this Settlement, its terms, or the negotiations leading thereto except in court papers to effectuate the Settlement or if required by legal process or as required by law.  Failure to comply with this Section 3.9(C) will result in the Participating Member being liable for damages to Defendants, not to exceed the Individual Settlement Amount he or she received in connection with the Settlement.  The obligations under this Section 3.9(C) will be communicated in the Settlement Notice to Settlement Group Members, other than Named Plaintiffs and Enhancement Award Plaintiffs, which is attached as Exhibit G;

(D)     **General Release of Claims by Named Plaintiffs and Enhancement Award Plaintiffs**.  Named Plaintiffs, and those Enhancement Award Plaintiffs who execute the agreement and release for Enhancement Award Plaintiffs, on his or her behalf, and on behalf of his or her respective current, former and future representatives, heirs, assigns, spouses, executors, administrators, beneficiaries, agents, and attorneys, as applicable and without limitation, generally release and discharge Defendants and the Releasees from any and all claims, actions, causes of action, lawsuits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, bonuses, controversies, agreements, promises, claims, charges, complaints and demands whatsoever, whether in law or equity, known or unknown, which the Named Plaintiffs and Enhancement Award Plaintiffs and their heirs, executors, administrators, successors, and assigns, ever had, may now have, or hereafter later determine that he has or had upon, or by reason of, any cause or thing whatsoever, including, but not limited to, relating to his or her employment or termination of employment, including, but not limited to, claims arising under the Age Discrimination in Employment Act ("ADEA"), Americans With Disabilities Act, the National Labor Relations Act, the Fair Labor Standards Act ("FLSA"), the Equal Pay Act, the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 et seq., including but not limited to, breach of fiduciary duty and equitable claims to be brought under §1132(a)(3) ("ERISA"), the Worker Adjustment and Retraining Notification Act, Title VII of the Civil Rights Act of 1964, the Vocational Rehabilitation Act of 1973, the Civil Rights Acts of 1866, 1871 and 1991, including Section 1981 of the Civil Rights Act, the Family and Medical Leave Act, the California Family Rights Act ("CFRA"), California Business & Professions Code, the California Labor Code, the California Private Attorneys General Act of 2004 ("PAGA"), if applicable, California's Wage Orders, and/or any other federal, state or local human rights, civil rights, wage-hour, pension or labor law, rule, statute, regulation, constitution or ordinance and/or public policy, contract or tort law, or any claim of retaliation under such laws, or any claim of breach of any contract (whether express, oral,

written or implied from any source), or any claim of intentional or negligent infliction of emotional distress, tortious interference with contractual relations, wrongful or abusive or constructive discharge, defamation, prima facie tort, fraud, negligence, loss of consortium, malpractice, breach of duty of care, breach of fiduciary duty or any action similar thereto against Defendants or Releasees, including any claim for attorneys' fees, expenses or costs based upon any conduct from the beginning of the world up to and including the date that the applicable Named Plaintiff executes this Settlement Agreement or the Enhancement Award Plaintiff executes the agreement and release for Enhancement Award Plaintiffs; provided, however, that (i) Named Plaintiffs and Enhancement Award Plaintiffs do not waive any right to file an administrative charge with the Equal Employment Opportunity Commission ("EEOC"), subject to the condition that they agree not to seek, or in any way obtain or accept, any monetary award, recovery or settlement therefrom; (ii) Named Plaintiffs and Enhancement Award Plaintiffs do not release any claim for breach of the terms of the Agreement; and (iii) Named Plaintiffs and Enhancement Award Plaintiffs do not waive any rights with respect to, or release Releasees from any workers' compensation insurance benefits to the extent any applicable state law prohibits the direct release of such benefits without judicial or agency approval, with the understanding that such benefits, if any, would only be payable  in accordance with the terms of any workers' compensation  coverage or fund of the Defendants.

Thus, for the purpose of implementing a full and complete release and discharge of the Releasees, Named Plaintiffs, and those Enhancement Award Plaintiffs who execute the agreement and release for Enhancement Award Plaintiffs, will expressly acknowledge that this General Release is intended to include in its effect, without limitation, all claims which Named Plaintiffs and Enhancement Award Plaintiffs do not know or suspect to exist in Named Plaintiffs and Enhancement Award Plaintiffs' favor at the time of execution hereof, and that this General Release contemplates the extinguishment of any such claim or claims.

In connection with such waiver and relinquishment, Named Plaintiffs, and those Enhancement Award Plaintiffs who execute the agreement and release for Enhancement Award Plaintiffs, hereby acknowledge that they or their attorneys may hereafter discover claims or facts in addition to, or different from, those which they now know or believe to exist, but that Named Plaintiffs and Enhancement Award Plaintiffs expressly agree to fully, finally and forever settle and release any and all claims, known or unknown, suspected or unsuspected, which exist or may exist on their behalf against Releasees at the time of execution of the Settlement Agreement by Named Plaintiffs or the agreement and release for Enhancement Award Plaintiffs by the Enhancement Award Plaintiffs, including, but not limited to, any and all claims relating to or arising from Named Plaintiffs and Enhancement Award Plaintiffs' employment with Releasees or the cessation of that employment.  Named Plaintiffs and Enhancement Award Plaintiffs and Releasees further acknowledge, understand and agree that this representation and commitment is essential to each Party and that this Settlement Agreement would not have been entered into were it not for this representation and commitment.

It is further understood and agreed that as a condition of this General Release, Named Plaintiffs, and those Enhancement Award Plaintiffs who execute the agreement and release for Enhancement Award Plaintiffs, expressly waive and relinquish any and all claims, rights or benefits that they may have under California Civil Code Section 1542, which provides as follows:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known to him or her must have materially affected his or her settlement with the debtor.

Named Plaintiffs and Enhancement Award Plaintiffs agree: (1) that they have been paid for any and all undisputed wages; (2) that they and Defendants have reached an amicable agreement regarding any and all amounts of disputed wages; and (3) that they are releasing Defendants from any wage claims as to any disputed wages, based on Plaintiff's or Enhancement Award Plaintiff's acknowledgement that the Plaintiff or Enhancement Award Plaintiff and Defendants have reached an amicable agreement regarding the payment of the disputed wages.

(E)     However, Enhancement Award Plaintiffs who do not execute and return the agreement and release for Enhancement Award Plaintiffs attached as Exhibit F but who do negotiate their Settlement Check for their Individual Settlement Amount will be considered Participating Members and will no longer hold the status of Enhancement Award Plaintiffs.

(F)     Named Plaintiffs hereby agree that they shall not seek and hereby waive any claim for employment or re-employment (as a full-time or part-time employee) or assignment or work (as a temporary worker, independent contractor or consultant) from any Defendant, and that this General Release shall be a complete bar to any such application, employment, continued employment, re-employment or work. In the event a Named Plaintiff becomes employed by Defendant by virtue of a merger or acquisition, this provision will not bar Named Plaintiff from such continued employment or assignment.

(G)     Named Plaintiffs, and those Enhancement Award Plaintiffs who execute the agreement and release for Enhancement Award Plaintiffs, further covenant that they (i) will not disclose to individuals other than immediate family, tax preparers, and attorneys this Settlement, its terms, or the negotiations leading thereto except in court papers to effectuate the Settlement or if required by legal process or required by law; (ii) will not disparage or impugn the reputation of Defendants in a manner that causes damage to the Defendants; and (iii) as of the date they execute this Agreement or the release for Enhancement Award Plaintiffs, are not participating in any other legal actions or proceedings  against Defendants, except to the extent they may be a putative class or collective member in *In re: Morgan Stanley Smith Barney LLC Wage and Hour Litigation*, Case No. 2:11-cv-03121

23

(D.N.J.), and to the extent they are pursuing any such actions other than *In re: Morgan Stanley Smith Barney LLC Wage and Hour Litigation*, Case No. 2:11-cv-03121 (D.N.J.), they will withdraw from and will opt-out of any such actions.

(H)   Named Plaintiffs certify that they have returned all property of Defendants or Releasees in their possession or control, including without limitation, equipment, telephones, credit cards, keys, pagers, tangible proprietary information, documents, computers and computer discs, personal data assistants, files and data, which they prepared or obtained during the course of their employment.

(I)   Nothing in this Release shall prohibit or restrict Named Plaintiffs, Enhancement Award Plaintiffs, or Participating Members from:  (i) providing information to, or otherwise assisting in, an investigation by Congress, the EEOC, the Securities and Exchange Commission or any other federal regulatory or law enforcement agency or self-regulatory organization; or (ii) complying with a lawful subpoena or other legal process, subject to the terms of the Agreement, or otherwise complying with applicable law.

(J)   **Release of Fees and Costs for Settled Matters**.  Plaintiffs' Counsel and Named Plaintiffs, on behalf of the Enhancement Award Plaintiffs and the Participating Members, hereby irrevocably and unconditionally release, acquit, and forever discharge any claim that they may have against Defendants or Releasees for attorneys' fees or costs associated with Plaintiffs' Counsel's representation of Named Plaintiffs and the Settlement Group Members in these Litigations, the Settlement, or any claims being released by this Agreement and related papers. Plaintiffs' Counsel further understand and agree that any fee payments approved by the Court will be the full, final and complete payment of all attorneys' fees and costs associated with Plaintiffs' Counsel's representation of these individuals.

**3.10**   **No Assignment**.  Plaintiffs' Counsel and Named Plaintiffs represent and warrant that they have not assigned or transferred, or purported to assign or transfer, to any person or entity, any claim or any portion thereof or interest therein, including, but not limited to, any interest in the Litigations.

**3.11**   **Non-Admission**.  Nothing relating to this Agreement, or any communications, papers, or orders related to the Settlement, shall be cited to as, construed to be, admissible as, or deemed an admission by Defendants or Releasees of any liability, culpability, negligence, or wrongdoing toward the Named Plaintiffs, the Settlement Group Members, or any other person, and Defendants and Releasees specifically disclaim any liability, culpability, negligence, or wrongdoing, or that class or collective action certification is appropriate in this or any other matter.  Each of the Parties has entered into this Agreement with the intention to avoid further disputes and litigation with the attendant inconvenience, expenses, and contingencies.  This Agreement, and any communications, papers, or orders related to the Settlement, may not be cited to, used, or admitted as evidence in any other matter or for any reason by or against Defendants, other than to enforce the Settlement or by Defendants to defend themselves from threatened or actual litigation. This Agreement, and any communications, papers, or orders related to the Settlement,

may not be cited to, used, or admitted as evidence of liability or that class or collective action certification is appropriate.  There has been no determination by any Court as to the merits of the claims asserted by Named Plaintiffs against Defendants or as to whether a class or collective should be certified.  Furthermore, nothing in this Agreement shall be considered any form of waiver of any alternative dispute resolution agreements, provisions, or policies by Defendants or Releasees.

3.12    **Non-Disclosure by Plaintiffs' Counsel**.  Prior to the filing of the Settlement Approval Motion, Plaintiffs' Counsel agree not to disclose the terms of this Settlement or the negotiations, except as otherwise agreed to effectuate this Settlement.  After the filing of the Settlement Approval Motion, Plaintiffs' Counsel shall not directly or indirectly issue any press release or initiate any press or other public disclosures other than to provide information publicly filed with any of the Courts in response to any inquiry. Plaintiffs' counsel shall not directly or indirectly encourage any such inquiry.   This provision does not preclude Plaintiffs' Counsel from otherwise complying with any applicable ethical rules.

3.13    **Non-Interference With Settlement**.  Pending the Court's decision on approval of the Settlement and entry of the Court's Order and Judgment, Named Plaintiffs and all Settlement Group Members and anyone acting on behalf of any Settlement Group Member shall be barred and enjoined from: (a) further litigation in these Litigations; (b) filing, or taking any action directly or indirectly, to commence, prosecute, pursue or participate on a class or collective action basis any action, claim or proceeding against Defendants in any forum in which any of the claims subject to the Settlement are asserted, or which in any way would prevent any such claims from being extinguished; or (c) seeking, whether on a conditional basis or not, certification of a class or collective action that involves any such claims.

3.14    **Return and/or Destruction of Confidential Settlement Materials**.  Named Plaintiffs and Plaintiffs' Counsel agree to return and/or destroy all documents produced to them in this action within sixty (60) days of (a) the Effective Date, or (b) the date the Court fails to enter Judgment or Named Plaintiffs or Defendants revoke the Settlement Agreement in accordance with Section 2.7.  If Plaintiffs and Plaintiffs' Counsel elect to destroy said documents, they shall timely provide an affidavit of destruction to Defendants.

3.15    **Miscellaneous**.

(A)    **Cooperation Between the Parties; Further Acts**.  The Parties shall cooperate fully with each other and shall use their reasonable best efforts to obtain the Court's approval of this Agreement and all of its terms.  Each of the Parties, upon the request of any other party, agrees to perform such further acts and to execute and deliver such other documents as are reasonably necessary to carry out the provisions of this Agreement.

(B)    **Entire Agreement**.  This Agreement constitutes the entire agreement between the Parties with regard to the subject matter contained herein, and all prior and

contemporaneous negotiations and understandings between the Parties shall be deemed merged into this Agreement.

(C)    **Binding Effect**.  This Agreement shall be binding upon the Parties, and on Plaintiffs' Counsel to the extent any specific provision expressly applies to Plaintiffs' Counsel, and, with respect to the Named Plaintiffs and Participating Settlement Group Members, their spouses, children, representatives, heirs, administrators, executors, beneficiaries, conservators, attorneys and assigns.

(D)    **Arms' Length Transaction; Materiality of Terms**.  The Parties have negotiated all the terms and conditions of this Agreement at arms' length.  All terms and conditions of this Agreement in the exact form set forth in this Agreement are material to this Agreement and have been relied upon by the Parties in entering into this Agreement.

(E)    **Construction**.  The determination of the terms and conditions of this Agreement has been by mutual agreement of the Parties.  Each party participated jointly in the drafting of this Agreement, and therefore the terms and conditions of this Agreement are not intended to be, and shall not be, construed against any party by virtue of draftsmanship.

(F)    **Governing Law**.  This Agreement shall in all respects be interpreted, enforced and governed by and under the laws of the State of Florida, without regard to choice of law principles, except to the extent that the law of the United States governs any matter set forth herein, in which case such federal law shall govern.

(G)    **Continuing Jurisdiction**.  The Court shall retain jurisdiction over the interpretation and implementation of this Agreement as well as any and all matters arising out of, or related to, the interpretation or implementation of this Agreement and of the settlement contemplated thereby.  The Court shall not have jurisdiction to modify the terms of the Agreement or to increase Defendants' payment obligations hereunder.

(H)    **Waivers, etc. to Be in Writing**.  No waiver, modification or amendment of the terms of this Agreement, whether purportedly made before or after the Court's approval of this Agreement, shall be valid or binding unless in writing, signed by or on behalf of all Parties and then only to the extent set forth in such written waiver, modification or amendment, subject to any required Court approval.  Any failure by any party to insist upon the strict performance by the other party of any of the provisions of this Agreement shall not be deemed a waiver of future performance of the same provisions or of any of the other provisions of this Agreement, and such party, notwithstanding such failure, shall have the right thereafter to insist upon the specific performance of any and all of the provisions of this Agreement.

(I)    **When Agreement Becomes Effective; Counterparts**.  Except for provisions of this Agreement requiring any Party to act or seek Court action prior to Court

26

approval, which provisions are intended to be binding on the parties upon mutual execution hereof, this Agreement shall become fully effective upon the Effective Date.  The Parties may execute this Agreement in counterparts, and execution in counterparts shall have the same force and effect as if Plaintiffs and Defendants had signed the same instrument.  A complete set of executed counterparts shall be filed with the Court.

(J)     **Extensions of Time**.  If any deadlines related to this Settlement cannot be met, Plaintiffs' Counsel and counsel for Defendants shall meet and confer to reach agreement on any necessary revisions of the deadlines and timetables set forth in this Agreement.  In the event that the Parties fail to reach such agreement, any of the Parties may apply to the Court via a noticed motion for modification of the dates and deadlines in this Agreement.

(K)     **Facsimile/Electronic Signatures**.  Any signature made and transmitted by facsimile or email for the purpose of executing this Agreement shall be deemed an original signature for purposes of this Agreement and shall be binding upon the party whose counsel transmits the signature page by facsimile or email.

(L)     The Agreement shall be binding upon, and inure to the benefit of, the successors and assigns of the parties hereto; but this Agreement is not designed to and does not create any third party beneficiaries other than third parties that are identified as Releasees in Section 3.9 of this Agreement.

**[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]**

**NAMED PLAINTIFFS:**

DATED: June 29, 2016

By: _____
Fred Devries

DATED: _____

By: _____
Dennis Fowler

DATED: _____

By: _____
Shelley Hix

DATED: _____

By: _____
Darlene Johnson

DATED: _____

By: _____
Sally Kolkmeyer

DATED: _____

By: _____
Mark Malter

DATED: _____

By: _____
Janine Natoli

DATED: _____

By: _____
Rafael Santiago

DATED: _____

By: _____
Ruby Teich

DATED: _____

By: _____
Adam Schwartz

DATED: _____

By: _____
Jason Zajonc

**NAMED PLAINTIFFS:**

DATED: _____

By:    Fred Devries

DATED: 6/29/2016

*Dennis M. Fowler*

By:    Dennis Fowler

DATED: _____

By:    Shelley Hix

DATED: _____

By:    Darlene Johnson

DATED: _____

By:    Sally Kolkmeyer

DATED: _____

By:    Mark Malter

DATED: _____

By:    Janine Natoli

DATED: _____

By:    Rafael Santiago

DATED: _____

By:    Ruby Teich

DATED: _____

By:    Adam Schwartz

DATED: _____

By:    Jason Zajonc

**NAMED PLAINTIFFS:**

DATED: _____

By:   Fred Devries

DATED: _____

By:   Dennis Fowler

DATED: 6/29/2016

By:   Shelley Hix

DATED: _____

By:   Darlene Johnson

DATED: _____

By:   Sally Kolkmeyer

DATED: _____

By:   Mark Malter

DATED: _____

By:   Janine Natoli

DATED: _____

By:   Rafael Santiago

DATED: _____

By:   Ruby Teich

DATED: _____

By:   Adam Schwartz

DATED: _____

By:   Jason Zajonc

**NAMED PLAINTIFFS:**

DATED: _____

By:    Fred Devries

DATED: _____

By:    Dennis Fowler

DATED: _____

By:    Shelley Hix

DATED: 6/29/2016

By:    Darlene Johnson

DATED: _____

By:    Sally Kolkmeyer

DATED: _____

By:    Mark Malter

DATED: _____

By:    Janine Natoli

DATED: _____

By:    Rafael Santiago

DATED: _____

By:    Ruby Teich

DATED: _____

By:    Adam Schwartz

DATED: _____

By:    Jason Zajonc

28

DocuSign Envelope ID: d7AAC3AFDB76E-452C-A4F9-C557EC56BAEA

**NAMED PLAINTIFFS:**

DATED: _____

By:    Fred Devries

DATED: _____

By:    Dennis Fowler

DATED: _____

By:    Shelley Hix

DATED: _____

By:    Darlene Johnson

DATED: 6/29/2016

By:    Sally Kolkmeyer

DATED: _____

By:    Mark Malter

DATED: _____

By:    Janine Natoli

DATED: _____

By:    Rafael Santiago

DATED: _____

By:    Ruby Teich

DATED: _____

By:    Adam Schwartz

DATED: _____

By:    Jason Zajonc

28

**NAMED PLAINTIFFS:**

DATED: _____

By:   Fred Devries

DATED: _____

By:   Dennis Fowler

DATED: _____

By:   Shelley Hix

DATED: _____

By:   Darlene Johnson

DATED: _____

By:   Sally Kolkmeyer

DATED: __6/29/2016__

By:   Mark Malter

DATED: _____

By:   Janine Natoli

DATED: _____

By:   Rafael Santiago

DATED: _____

By:   Ruby Teich

DATED: _____

By:   Adam Schwartz

DATED: _____

By:   Jason Zajonc

DocuSign Envelope ID: AD535357C077-4783-B3F9-578E301BEE7F

**NAMED PLAINTIFFS:**

DATED: _____

　　　　　　　　　　　By:　_____
　　　　　　　　　　　　　　Fred Devries

DATED: _____

　　　　　　　　　　　By:　_____
　　　　　　　　　　　　　　Dennis Fowler

DATED: _____

　　　　　　　　　　　By:　_____
　　　　　　　　　　　　　　Shelley Hix

DATED: _____

　　　　　　　　　　　By:　_____
　　　　　　　　　　　　　　Darlene Johnson

DATED: _____

　　　　　　　　　　　By:　_____
　　　　　　　　　　　　　　Sally Kolkmeyer

DATED: _____

　　　　　　　　　　　By:　_____
　　　　　　　　　　　　　　Mark Malter

DATED: 6/29/2016

　　　　　　　　　　　By:　_Janine Natoli_____
　　　　　　　　　　　　　　Janine Natoli

DATED: _____

　　　　　　　　　　　By:　_____
　　　　　　　　　　　　　　Rafael Santiago

DATED: _____

　　　　　　　　　　　By:　_____
　　　　　　　　　　　　　　Ruby Teich

DATED: _____

　　　　　　　　　　　By:　_____
　　　　　　　　　　　　　　Adam Schwartz

DATED: _____

　　　　　　　　　　　By:　_____
　　　　　　　　　　　　　　Jason Zajonc

28

**NAMED PLAINTIFFS:**

DATED: _____

By: _____

Fred Devries

DATED: _____

By: _____

Dennis Fowler

DATED: _____

By: _____

Shelley Hix

DATED: _____

By: _____

Darlene Johnson

DATED: _____

By: _____

Sally Kolkmeyer

DATED: _____

By: _____

Mark Malter

DATED: _____

By: _____

Janine Natoli

DATED: 6/29/2016

By: _____

Rafael Santiago

DATED: _____

By: _____

Ruby Teich

DATED: _____

By: _____

Adam Schwartz

DATED: _____

By: _____

Jason Zajonc

**NAMED PLAINTIFFS:**

DATED: _____

By: _____

       Fred Devries

DATED: _____

By: _____

       Dennis Fowler

DATED: _____

By: _____

       Shelley Hix

DATED: _____

By: _____

       Darlene Johnson

DATED: _____

By: _____

       Sally Kolkmeyer

DATED: _____

By: _____

       Mark Malter

DATED: _____

By: _____

       Janine Natoli

DATED: _____

By: _____

       Rafael Santiago

DATED: 6/29/2016

By: _____

       Ruby Teich

DATED: _____

By: _____

       Adam Schwartz

DATED: _____

By: _____

       Jason Zajonc

**NAMED PLAINTIFFS:**

DATED: _____

By:   Fred Devries
       _____

DATED: _____

By:   Dennis Fowler
       _____

DATED: _____

By:   Shelley Hix
       _____

DATED: _____

By:   Darlene Johnson
       _____

DATED: _____

By:   Sally Kolkmeyer
       _____

DATED: _____

By:   Mark Malter
       _____

DATED: _____

By:   Janine Natoli
       _____

DATED: _____

By:   Rafael Santiago
       _____

DATED: _____

By:   Ruby Teich
       _____

DATED: 6/29/2016

By:   Adam Schwartz
       _____

DATED: _____

By:   Jason Zajonc
       _____

28

DocuSign Envelope ID: 647AABF9FA62-49ED-AF7F-46F0F916B66E

**NAMED PLAINTIFFS:**

DATED: _____

By:      _____

     Fred Devries

DATED: _____

By:      _____

     Dennis Fowler

DATED: _____

By:      _____

     Shelley Hix

DATED: _____

By:      _____

     Darlene Johnson

DATED: _____

By:      _____

     Sally Kolkmeyer

DATED: _____

By:      _____

     Mark Malter

DATED: _____

By:      _____

     Janine Natoli

DATED: _____

By:      _____

     Rafael Santiago

DATED: _____

By:      _____

     Ruby Teich

DATED: _____

By:      _____

     Adam Schwartz

DATED: 6/29/2016

By:      *Jason Zajonc*

     Jason Zajonc

28

**DEFENDANTS:**

DATED: _6/29/16_ , 2016

By: On behalf of Defendants Morgan Stanley & Co. LLC f/k/a Morgan Stanley & Co. Incorporated; Morgan Stanley Smith Barney, LLC; and Morgan Stanley

With respect only to the obligations of Plaintiffs' Counsel set forth in sections 2.4(B), 2.4(f), 3.2(A). 3.9(J), 3.10, 3.12 and 3.14 above:

**PLAINTIFFS' COUNSEL:**

DATED: June 29, 2016                KLAFTER OLSEN & LESSER LLP


By:    Seth R. Lesser
       Fran L. Rudich
       Jason Conway
       Kurt Olsen

Two International Drive, Suite 350
Rye Brook, NY  10573
(914) 934-9200
FAX:  (914) 934-9220


DATED: _____, 2016    SHAVITZ LAW GROUP, P.A.


By:    Gregg I. Shavitz
       Susan H. Stern
       Paolo C. Meireles
       Michael Palitz

1515 South Federal Highway, Suite 404
Boca Raton, FL  33432
(561) 447-8888
FAX:  (561) 447-8831


DATED: _____, 2016    OUTTEN GOLDEN LLP


By:    Cara B. Chomski
       Justin Swartz

3 Park Avenue
29th Floor
New York, NY  10016
(212) 245-1000

30

With respect only to the obligations of Plaintiffs' Counsel set forth in sections 2.4(B), 2.4(f), 3.2(A). 3.9(J), 3.10, 3.12 and 3.14 above:

**PLAINTIFFS' COUNSEL:**

DATED: _____, 
2016

KLAFTER OLSEN & LESSER LLP

By:  Seth R. Lesser
     Fran L. Rudich
     Jason Conway
     Kurt Olsen

Two International Drive, Suite 350
Rye Brook, NY  10573
(914) 934-9200
FAX:  (914) 934-9220

DATED: June 29, 
2016

SHAVITZ LAW GROUP, P.A.

By:  Gregg I. Shavitz
     Susan H. Stern
     Paolo C. Meireles
     Michael Palitz

1515 South Federal Highway, Suite 404
Boca Raton, FL  33432
(561) 447-8888
FAX:  (561) 447-8831

DATED: June 29, 
2016

OUTTEN GOLDEN LLP

By:  Cara E. Chomski
     Justin Swartz

3 Park Avenue
29th Floor
New York, NY  10016
(212) 245-1000

30

FAX:  (212) 977-4005

Jahan C. Sagafi
Julia Rabinovich

One Embarcadero Center
38th Floor
San Francisco, CA  94111
(415) 638-8800
FAX:  (415) 638-8810

DATED: <u>June 29</u>, 2016       MIGLIACCIO LAW FIRM PLLC

By:     Nicholas A. Migliaccio

438 16th Street SE
Washington, DC  20003
(202) 470-3520
FAX:  (202) 810-0081

31